IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 20, 2025, at Knoxville

## STATE OF TENNESSEE v. CHRISTOPHER KENN BAKER

**Appeal from the Circuit Court for Madison County**
**No. 23-541   Joseph T. Howell, Judge**
_____

### No. W2024-01427-CCA-R3-CD
_____

Defendant, Christopher Kenn Baker, pleaded guilty to solicitation of a minor to commit aggravated statutory rape for which he received a sentence of two years' confinement. On appeal, Defendant argues the trial court erred in denying judicial diversion. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Lloyd R. Tatum, Henderson, Tennessee (on appeal); and Jennifer D. Free, Jackson, Tennessee (at hearing), for the appellant, Christopher Kenn Baker.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Jody Pickens, District Attorney General; and Lee Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

On August 23, 2023, the Madison County Grand Jury indicted Defendant, formerly a twenty-two-year employee at the Tennessee Department of Children's Services ("DCS"), for one count of solicitation of a minor to commit aggravated statutory rape. *See* Tenn. Code Ann. § 39-13-528(a)(7). On June 20, 2024, Defendant entered an open guilty plea subject to a sentencing hearing. At the plea hearing, the State did not recite the factual basis for the plea, but Defendant stipulated that there was a factual basis underlying the

indicted offense and agreed that the trial court would decide the manner and duration of the sentence.

During the August 12, 2024 sentencing hearing, proof was presented that on March 2, 2023, Defendant left a note on the car windshield of the minor victim, K.B.[1] The note read, "I know this is strange but I noticed you going into Walmart. You seem[ed] to notice me, and you looked back." Defendant then provided his phone number and an instruction for K.B. to text him if K.B. was "interested." After finding the note, K.B. told her mother, who contacted the Bolivar Police Department ("BPD"). The following day, BPD officers reached out to Investigator Aubrey Richardson, a Jackson Police Department ("JPD") officer assigned to Tennessee's Internet Crimes Against Children Task Force, and requested his assistance in speaking with Defendant in an undercover capacity.

Investigator Richardson testified that he was a certified online undercover officer and that in March 2023, he agreed to assist BPD in speaking with Defendant in an undercover capacity. Investigator Richardson explained that he contacted Defendant exclusively through text messages using K.B's cell phone. He identified a printout from the forensic phone extraction of K.B.'s cell phone that depicted the text messages that Investigator Richardson exchanged with Defendant while posing as K.B. A text message was sent to Defendant stating that K.B. was "shy and nervous" because she was sixteen years old. In the reply messages, Defendant explained that he was fifty years old, divorced, and worked for DCS.

As the conversation continued, Defendant sent pictures of himself and requested that K.B. do the same. Defendant asked her if she had "a thing for older men" and whether she was interested in "having a side fling." Defendant send a text message stating that a "fling can mean anything. If you want it to be a hook up . . . or we can just let it be what it develops into." Defendant received a text message from K.B.'s cell phone stating that she was not "experienced," to which Defendant replied that he could be "gentle" and "exciting." Defendant asked K.B. what her experience was with sex and whether she was interested in "experimenting" with "oral and anal." Defendant told K.B. that he "love[s] giving head as much as I do getting it!!" Defendant emphasized several times that K.B. needed to keep their communications secret.

Defendant eventually asked K.B. through a text message if she wanted to "hook up." Defendant's text message stated they could meet at Malesus Park in Jackson, that the park has "private places," and that he had "[u]sed it a few times." On the day of the arranged meeting, Defendant was working at a Madison County youth facility and took a

---

[1] Because it is the policy of this court to protect the identify of minor victims of criminal offenses, we will refer to the minor victim by her initials.

break to go to the park. When Defendant arrived, he was taken into custody by JPD officers.

The State exhibited the presentence report prepared by the Tennessee Department of Correction at the hearing. The report showed that Defendant had no prior convictions or gang affiliation and that he had graduated from the University of Tennessee at Martin with a degree in social work in 1995. At the time the report was compiled, Defendant formerly had been employed with DCS for twenty-two years with his last position being an Administrative Team Leader. The report stated that he had been terminated from this position due to the current charge and that he was now employed by ABB Industrial Connections and Solutions, LLC. A Vermont Assessment of Sex Offender Risk was completed on Defendant, and he scored as a low risk of being charged with committing a new sexual or violent offense. The report also contained a Risk and Needs Assessment, which concluded that Defendant's overall risk of reoffending was low.

The report contained the Sex Offender Investigation Worksheet completed by probation and parole officers who had visited Defendant's residence. The officers noted that Defendant lived with his wife and his wife's sixteen-year-old daughter. During the officers' visit, the stepdaughter disclosed that she was in therapy for suicidal thoughts unrelated to Defendant's charges. She explained that she anticipated "social services or foster care" would remove her from the home due to her "not feeling safe in the home."

Defendant offered an unsworn allocution in which he stated that he was "very remorseful this situation did occur." He explained,

> I had a temporary lapse in judgment, and it is not because I got caught. It's been very embarrassing to me. It's been very embarrassing to my family. I lost a job I had for twenty-two years over just some text messages.

> And my thing is, is if I had – I think every night when I wake up, I wake up every morning wishing I could take it all back, and I keep thinking to myself, "What is it – what was going through my mind when that was going on?" And to the life of me, I can't figure out what it was, but it's not – it's not there anymore.

> And . . . it's been very embarrassing. I can't walk through my hometown without people looking at me. I can't, you know, walk through Walmart or walk through any store with my wife and my stepchild without people looking at me.

And it's been – it's been very hard, and I've lost a lot. I'm fifty-two years, fixing to be fifty-two years, and I've pretty much had to start my life all over again with a new job and everything, and it's not worth it, I mean. And I just – I just wish I could take it all back and just make this disappear, but I can't.

Defendant further presented five letters of support from family and community members requesting that he be granted judicial diversion.

Defense counsel argued for judicial diversion based on several factors. Counsel noted that Defendant had no prior criminal record and that Defendant supported himself and his family through full-time employment. Counsel emphasized that Defendant was remorseful and that he had taken responsibility for his actions through his guilty plea and cooperation with law enforcement. Counsel further argued that Defendant's letters of support demonstrated that his actions were contrary to how Defendant normally conducted himself. Counsel noted that Defendant was eligible for judicial diversion, had a "great support system," and was amenable to community service work.

The trial court took the matter under advisement and made oral findings during a subsequent hearing. The court noted that Defendant was a Range I, standard offender and had no prior criminal history. The court found the following sentencing enhancement factors applicable: that the victim was particularly vulnerable due to age or mental disability, Tenn. Code Ann. § 40-35-114(4); and that the offense was committed to gratify the Defendant's desire for sexual pleasure or excitement, *id.* § 40-35-114(7). The court gave each of these factors "great weight." The court found the following mitigating factor applicable: Defendant's conduct neither caused nor threatened serious bodily injury. *Id.* § 40-35-113(1). The court gave that factor "moderate weight."

The court noted that Defendant "claims remorse, but when we were here previously, he only talked about the effects this had on him." The court stated that it "consider[ed] the presentence report[,] . . . [Defendant's] physical and mental condition and social history, the facts and circumstances surrounding the offense, and the nature and circumstances of the criminal conduct involved." The court reflected that "[t]he State made argument that, at the time of the offense, [Defendant] was employed with an agency that was tasked with protecting children, yet he preyed on this victim." The court further reflected that it "considers whether or not the interest of society needs to be protected from the possible future criminal conduct of [Defendant] are great and whether or not a sentence of probation would unduly depreciate the seriousness of the offense."

Finally, the court made specific findings regarding the circumstances of the offense. The court stated that the text messages were "extremely graphic" and highlighted

- 4 -

Defendant's knowledge that K.B. was a minor. The court described Defendant's actions as not "spontaneous" or "just a moment of weakness," but rather, the "text messages went on from March the third through March the seventh. Essentially, [Defendant] was grooming the victim." The court noted that Defendant told K.B. to keep the messages private and that Defendant made further requests for photographs and talked about "different sexual positions with [K.B.]." The court stated that the message which "really threw [the court] over," was Defendant's arrangement to meet K.B. at a public park that "seems to have some private places . . . I've used it a few times."

The court denied Defendant's request for judicial diversion and ordered Defendant to serve a two-year sentence in confinement at 100 percent. The court further ordered Defendant to register as a sex offender upon his release.

## II. Analysis

On appeal, Defendant argues that the trial court erred by denying his request for judicial diversion. The State argues that the court acted within its discretion in denying judicial diversion, and the record supports the court's decision.

Following a determination of guilt by plea or trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A); *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015). The trial court's deferral of proceedings under section 40-35-313 is commonly referenced as "judicial diversion." After "successful completion of the probationary period under judicial diversion, 'the court shall discharge the person and dismiss the proceedings against the person.'" *Dycus*, 456 S.W.3d at 925 (quoting Tenn. Code Ann. § 40-35-313(a)(2)). Following such dismissal, the defendant may seek expungement of the defendant's criminal record. *Id.* (first citing Tenn. Code Ann. § 40-35-313(a)(1)(A); and then citing *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014)). As such, "judicial diversion is not a sentence; rather, the grant or denial of judicial diversion is simply a decision to defer a sentence or to impose one." *State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *6 (Tenn. Crim. App. Apr. 12, 2023) (citing *King*, 432 S.W. 3d at 324-25). "Our supreme court has described judicial diversion as a 'legislative largess' available to a qualified defendant." *Id.* (citing *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)).

A defendant may qualify for diversion if the defendant is found guilty of, or pleads guilty or nolo contendere to, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant does not have a prior conviction for a felony or Class A misdemeanor. Tenn. Code Ann. § 40-35-313(a)(1)(B)(i)(b), (c). In this case, Defendant was eligible for judicial diversion as he was convicted of solicitation of minor to commit

aggravated statutory rape, a Class E felony. *See id.* § 40-35-313(a)(1)(B)(ii) (defining "sexual offense" so as not to include solicitation of minor to commit aggravated statutory rape). However, a defendant eligible for judicial diversion is not entitled to diversion as a matter of law. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000)). Like other sentencing decisions, a trial court's decision to grant or deny judicial diversion is reviewed for an abuse of discretion with a presumption of reasonableness. *See King*, 432 S.W.3d at 329.

In determining whether to grant diversion, the trial court is to consider the following factors: (1) the accused's amenability to correction, (2) the circumstances of the offense, (3) the accused's criminal record, (4) the accused's social history, (5) the accused's physical and mental health, (6) the deterrence value to the accused as well as others, and (7) whether judicial diversion will serve the interests of the public as well as the accused. *State v. Electroplating,* 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing first *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); and then *Bonestel*, 871 S.W.2d at 168). After considering the factors, the trial court "must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *Electroplating*, 990 S.W.2d at 326). Our supreme court has observed,

> Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision. Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*King*, 432 S.W.3d at 327 (footnote omitted). "If, however, the trial court fails to consider and weigh the applicable common law factors[,] . . . the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration." *Id.* at 327-28. Such a decision "is within the discretion of the reviewing court." *Id.* at 328.

Here, the record does not reflect that the trial court considered each of the *Parker*/*Electroplating* factors or specifically identified the relevant factors applicable to

the instant case and weighed them against one another. For example, although the court referenced many of the factors—or aspects of them—such as Defendant's social history, physical and mental health, and the public's interest in protection from potential future criminal conduct, its specific findings lacked any detail and failed to show how the court assigned those factors specific weight. *See id.* at 327. Instead, the court's weighing of the factors can only be inferred from the sentence imposed, when, in fact, its determination should reflect a reasoned analysis of the findings. *See id.* (stating that a trial court's decision to deny judicial diversion should be supported by adequate reasons). The court further appeared to conflate the factors for alternative sentencing and the factors of judicial diversion. While similar, these are two separate things. *See State v. Horn*, No. M2022-00615-CCA-R3-CD, 2023 WL 4624495, at \*7-8 (Tenn. Crim. App. July 19, 2023) (stating that although the factors relevant to issues of judicial diversion and alternative sentencing can overlap, the two concepts and their underlying purposes are distinct, and should be analyzed separately). Here, the court's discussion of the principles of sentencing is intertwined with its discussion of factors related to diversion, such as Defendant's physical and mental condition and the circumstances of the offense. Hence, the abuse of discretion standard of review is not appropriate. *See King*, 432 S.W.3d at 327; *State v. Fucci*, No. M2022-01425-CCA-R3-CD, 2023 WL 6785862, at \*5 (Tenn. Crim. App. Oct. 13, 2023); *State v. Walsh*, No. M2020-00057-CCA-R3-CD, 2021 WL 1847210, at \*6 (Tenn. Crim. App. May 10, 2021). Nonetheless, the trial court's factual findings during the sentencing hearing and the adequacy of the record are sufficient to allow this court to review its decision de novo, rather than remand the case for reconsideration by the trial court. *King*, 432 S.W.3d at 328.

The first *Parker*/*Electroplating* factor is the accused's amenability to correction. While the trial court did not directly make a finding as to Defendant's amenability to correction, it did offer insight through its comments on Defendant's allocution. Specifically, the court noted that Defendant "claims remorse, but when we were here previously, he only talked about the effects this had on him." Under Tennessee jurisprudence, "a lack of remorse is a relevant factor for trial courts to consider in determining suitability for judicial diversion." *State v. Willoughby*, No. E2023-01499-CCA-R3-CD, 2025 WL 1202079, at \*5 (Tenn. Crim. App. Apr. 25, 2025) (citing *State v. Brown*, No. E2019-00223-CCA-R3-CD, 2020 WL 3456737, at \*19 (Tenn. Crim. App. June 25, 2020) ("Lack of remorse relates to Defendant's amenability to correction.")). As noted by the trial court, Defendant's allocution centered on the personal hardships he had faced because of his criminal charges. *See State v. Hodges*, No. M2016-01057-CCA-R3-CD, 2017 WL 3085434, at \*5 (Tenn. Crim. App. July 20, 2017) (affirming finding that the defendant lacked remorse when he appeared more concerned with personal consequences than impact on the victim); *State v. Oakes*, No. E2006-01795-CCA-R3-CD, 2007 WL 2792934, at \*9 (Tenn. Crim. App. Sept. 27, 2007) (deeming lack of remorse an appropriate consideration when the defendant prioritized personal consequences over victim impact).

Defendant did not acknowledge the potential harm to K.B., and his claim that he "lost a job I had for twenty-two years over *just some text messages*" highlights his failure to appreciate the seriousness of his charges. (Emphasis added). Defendant's statement that he "had a temporary lapse in judgment" is contradicted by the text messages in which he told the victim that he had used Malesus Park "a few times" for purported sexual encounters and his messaging K.B. over the course of several days. This court acknowledges that in addition to Defendant's allocution, several community and family members wrote letters supporting him and that several of the assessments Defendant completed before the sentencing hearing suggested that Defendant had a low risk to reoffend. Nonetheless, Defendant's failure to show remorse shows a lesser amenability to correction, and we conclude that this factor weighs against the grant of judicial diversion.

The second *Parker/Electroplating* factor regarding the circumstances of the offense also weighs against judicial diversion. At the time of Defendant's offense, he was a twenty-two-year veteran employee of a state agency tasked with the protection of minors. Despite this, Defendant attempted to groom a sixteen-year-old girl over the course of several days: asking for photographs, inquiring about the victim's sexual history and practices, talking about sexual positions, and ultimately arranging a sexual rendezvous at a public park. Moreover, Defendant knew K.B. was a minor and thus conducted his solicitation in secret, repeatedly instructing her to "keep this between us." Finally, as the trial court found, while Defendant's actions neither caused nor threatened serious bodily injury, the offense was committed to gratify Defendant's desire for pleasure or excitement.

Regarding the third factor, the accused's criminal record, Defendant had no prior criminal record before his offense. This factor weighs in Defendant's favor. Regarding the fourth factor, Defendant's social history, proof from the sentencing hearing showed that Defendant obtained full-time employment following his firing from DCS and that he was married and lived with his wife and stepdaughter. This factor is affected by Defendant's stepdaughter's fear she would be removed by social services for "not feeling safe in the home," and carries little weight.

As to the fifth factor, Defendant's physical and mental health, the record that Defendant had some physical impairments that were managed medicinally but was not experiencing any mental health problems as of sentencing. Thus, Defendant had "the demonstrated physical and mental ability to comply with the conditions of probation and sentencing." *Sheets*, 2023 WL 2908652, at *11. This factor is favorable to Defendant but also shows he would not experience physical or mental hardships while incarcerated.

The sixth factor concerns specific and general deterrence and the seventh factor is whether judicial diversion will serve the interests of the public as well as the accused. We note that the trial court referenced, but did not explicitly adopt, the State's argument at the

sentencing hearing regarding the need to avoid depreciating the seriousness of the offense and to provide an effective deterrent to others. The State specifically noted Defendant's employment with DCS and argued that Tennesseans "deserve to know that the people that are working in the agency that is protecting children are not then going to try to victimize those same children."

The need for deterrence, both specific and general, is clearly reflected in the record. At the time of offense, Defendant was employed by an agency responsible for protecting minors. While in that position, Defendant secretly solicited a sexual "fling" with a sixteen-year-old. Despite knowing the minor's age, Defendant planned a sexual rendezvous in a public park that he admitted having "used . . . a few times." Defendant's actions contravened the agency's purpose and his own words suggested that he had engaged in similar behavior previously at the same location. Therefore, the need to deter Defendant and others is great. *See Sheets*, 2023 WL 2908652, at *11-12 (stating that in the diversion context, the deterrence value to the accused and others is of equal importance, especially where the defendant has previously engaged in similar conduct of the same type as the offense in question).

We now turn to the interests of the public and Defendant. In addressing the public's interest, the trial court may consider such factors as the victim's injuries, the seriousness of the offense, and whether the collateral consequences of a conviction would protect the public. *Id*. at *12 (citing *State v. White*, No. M2021-00118-CCA-R3-CD, 2022 WL 570136, at *5 (Tenn. Crim. App. Feb. 25, 2022); *State v. Lampkin*, No. W2019-00885-CCA-R3-CD, 2020 WL 1875238, at *4 (Tenn. Crim. App. Apr. 15, 2020); *State v. Ailey*, No. E2017-02359-CCA-R3-CD, 2019 WL 3917557, at *22 (Tenn. Crim. App. Aug. 19, 2019)). Regarding a defendant's interests, the trial court "may consider diversion as advancing the interests of the accused when a felony conviction may impair future employment" or if "necessary to avoid the stigma of a felony conviction." *Id*. (first citing *State v. Kellar*, No. E2018-00313-CCA-R3-CD, 2019 WL 1498641, at *4 (Tenn. Crim. App. Apr. 3, 2019); and then citing *State v. Robertson*, No. W2020-00439-CCA-R3-CD, 2020 WL 6821702, at *5 (Tenn. Crim. App. Nov. 20, 2020)).

Here, the public's interest is evident in the record because Defendant's job involving children was one of public trust. "This court has recognized that '[t]he fact that the appellant violated a position of public trust bears directly on the public interest.'" *Willoughby*, 2025 WL 1202079, at *9 (quoting *State v. Houston*, 900 S.W.2d 712, 715 (Tenn. Crim. App. 1995)). As argued by the State at the sentencing hearing, the public has a strong interest in protecting children.

Addressing Defendant's interest is more nuanced. Despite the criminal charges, he continued to receive support from both his family and the community, and he was able to

obtain full-time employment following his termination from DCS. Nevertheless, the record does not reflect that this support or his employment would be jeopardized if diversion were denied. Additionally, while the nature and circumstances of Defendant's offense carry a significant stigma, Defendant himself acknowledged that he could not walk through his hometown "without people looking at [him]." Therefore, diversion would not meaningfully serve his interest in avoiding the stigma of a felony conviction. When considered against the need for deterrence and the strong public interest, the six and seventh factors weigh against granting diversion for Defendant.

Based on our de novo review and weighing of the *Parker*/*Electroplating* factors, the trial court's findings of fact, and the entire record, we conclude that judicial diversion was not warranted in Defendant's case. Despite Defendant's lack of a criminal record, his positive social history, and his positive physical and mental health, the remaining factors clearly weigh against those factors and granting diversion. Therefore, Defendant is not entitled to relief.

## III. Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
